UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RINKU PATEL, PharmD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 24 C 8110 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| CBC PHARMA HOLDCO LLC, ) | |
| PHARMACY MANAGEMENT LLC, ) | |
| ASHOK NAYYAR, an individual, ) | |
| JEFFREY KELLY, an individual, ) | |
| JONATHAN TUNIS, an individual, and ) | |
| BARRY BEST, an individual, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

After OptioRx, LLC ("OptioRx") terminated Plaintiff Rinku Patel, PharmD, from her role as chief executive officer ("CEO") of the company, Patel filed this lawsuit. She originally named OptioRx as a defendant, but because OptioRx filed for bankruptcy, in her second amended complaint, she seeks to proceed against CBC Pharma Holdco LLC ("CBC"), OptioRx's sole member-owner; Pharmacy Management LLC ("Pharmacy Management"), OptioRx's manager; Barry Best, Jeffrey Kelly, and Jonathan Tunis, who all served on Pharmacy Management's board; and Ashok Nayyar, the chief investment officer for OptioRx's senior lender. Patel brings claims against Defendants for violations of the Illinois Wage Payment Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.*, and violation of the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. 174/1 *et seq.* She also brings claims for retaliatory discharge and breach of contract against CBC and Pharmacy Management. All Defendants but CBC have filed a motion to dismiss for lack of personal jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(2).[1] Because Defendants have sufficient contacts with Illinois that are related to Patel's claims and the fiduciary shield doctrine does not apply, the Court denies Defendants' motion to dismiss and allows Patel's claims against Defendants to proceed to discovery.

## BACKGROUND[2]

### I. The Parties

Patel, a Doctor of Pharmacy, has worked in the pharmaceutical industry for over twenty years. She held senior-level executive positions with Diplomat Specialty Pharmacy, OptionCare, Caremark, and Walgreens. She founded KloudScript, Inc., a specialty pharmacy software company that was acquired in 2020. Patel joined OptioRx as its CEO in February 2022. OptioRx, a limited liability company, had its offices in Oakbrook, Illinois at that time.

CBC, a Delaware corporation, was the sole member-owner of OptioRx and served as OptioRx's manager until September 2022. As manager, CBC controlled OptioRx's day-to-day

---

[1] For purposes of this Opinion, the Court uses "Defendants" to refer collectively to Pharmacy Management, Best, Kelly, Nayyar, and Tunis. The Court refers to Best, Kelly, Nayyar, and Tunis collectively as the "Individual Defendants."

[2] In addressing personal jurisdiction, the Court is not limited to the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court draws the facts from the second amended complaint and the additional documents submitted by the parties.

Defendants argue in reply that Patel's failure to provide an affidavit or declaration in connection with her response brief warrants dismissal given the fact that Defendants submitted an affidavit contesting jurisdiction. The Court accepts as true the uncontroverted facts in Defendants' affidavit. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). But Defendants' affidavit does not call into question the majority of Patel's allegations. Therefore, to the extent that Defendants' affidavit does not controvert Patel's allegations, the Court treats those allegations as true for purposes of resolving this motion. *See Greene v. Karpeles*, No. 14 C 1437, 2019 WL 1125796, at *2 (N.D. Ill. Mar. 12, 2019) ("[A]ll that *Purdue Research* meant . . . is that a plaintiff must go beyond the pleadings and submit evidence *only* if it wants to dispute evidence submitted by the defendant on a particular factual issue; the passage does not mean that if the defendant submits evidence regarding Factual Issue A, the complaint's allegations regarding Factual Issues B-Z are disregarded for Rule 12(b)(2) purposes unless the plaintiffs submit corroborating evidence. Accordingly, the court credits the averments in Karpeles's declaration only where Plaintiffs have not produced contrary evidence, and accepts as true the complaint's allegations insofar as the declaration does not contradict them." (citation omitted)).

operations and executed Patel's employment agreement in that capacity. That employment agreement provided that Patel reported to OptioRx's manager and would perform the duties assigned to her by the manager, working remotely from Lemont, Illinois.

MC Credit Partners ("MCCP") is OptioRx's senior lender. The Individual Defendants are managing directors of MCCP. Nayyar also serves as MCCP's chief investment officer and Tunis as its general counsel. Best, Kelly, and Nayyar reside in New York, while Tunis resides in Connecticut. In September 2022, Pharmacy Management, reportedly at MCCP's behest, replaced CBC as OptioRx's manager. Pharmacy Management is a Delaware limited liability company based in Connecticut. Pharmacy Management's board of managers (the "Board") included Best, Kelly, Tunis, Jon Finch, a representative of Caprice Capital, and Jarlath Johnston, whom Nayyar appointed. The Board served as the board for OptioRx as well.

**II.     Issues at OptioRx**

Within ten days of Patel joining OptioRx, Caremark, a major pharmacy benefit manager, sent OptioRx a termination notice due to fraudulent billing practices by certain OptioRx pharmacies. This cancellation accounted for thirty percent of OptioRx's gross profit. Patel enlisted a regulatory compliance firm to help OptioRx resolve its issues with Caremark. The parties reached a settlement, which required OptioRx to enter into a third party audited corporate compliance plan.

Around the same time, Patel learned that OptioRx defaulted on its debt in the third quarter of 2021 and was preparing to inform lenders subordinate to MCCP that it would stop payment on all debt secondary to MCCP. OptioRx received an equity infusion to rectify the insolvency. OptioRx's leadership knew of these financial issues when recruiting Patel but did not disclose them to her.

In her role as CEO, Patel discovered various regulatory issues that hurt OptioRx's viability and growth. Patel attempted to resolve these issues by hiring new regulatory counsel, correcting facility-related deficiencies, and developing new compliance processes. Patel communicated this information to the Board and MCCP. But the Individual Defendants rejected Patel's efforts to improve OptioRx's regulatory standing, prioritizing revenue over patient safety and regulatory compliance.

Patel also learned that one of OptioRx's pharmacies and its manager were engaged in an illegal kickback practice, paying a physician a marketing fee for sending prescriptions to the pharmacy for fulfillment and for billboards that advertised the physician's services. Patel instructed Andrew Charter, OptioRx's chief pharmacy officer, to terminate the kickback practice and discussed the issue with the Board at a Board meeting. The Board, especially Kelly, appeared to already know of the kickback practice. In February 2023, Charter secretly spoke with Best and Kelly about how to retain the pharmacy manager and replace Patel. OptioRx ultimately lost its relationship with the pharmacy, however, with Best and Kelly blaming Patel for the associated revenue loss.

**III.  Defendants' Control over OptioRx and Patel**

The Individual Defendants regularly managed Patel's work and OptioRx's day-to-day operations. In April 2022, Nayyar directed Patel to terminate OptioRx's management team in light of OptioRx's financial losses. Patel told Nayyar she needed the Board's permission and the support of OptioRx's counsel to execute the request. But Nayyar responded, "we are the board, we don't need anyone's permission." Doc. 19 ¶ 34. In June 2022, Nayyar informed Patel that MCCP would take over OptioRx's operations by replacing CBC with a new entity controlled by MCCP as OptioRx's manager. After this occurred, in November 2022, Tunis asked Patel to join

4

the Board. Documentation Patel received about the Board indicated that MCCP would have control over it. After participating in one meeting on November 17, 2022 at OptioRx's Oakbrook offices, which Best and Kelly also attended in person, Patel resigned from the Board. After her resignation, Tunis joined the Board in her place, which meant MCCP directors held three of the five seats on the Board.

The Individual Defendants required Patel to have biweekly calls with them to discuss OptioRx's operations, financial status, and challenges. Nayyar also frequently contacted Patel on her personal phone to discuss OptioRx. Kelly and Best attended February 16, 2023, May 18, 2023, and June 26, 2023 Board meetings at OptioRx's offices, while Tunis attended by teleconference. Best also attended a November 9, 2023 Board meeting in person in Illinois, with Kelly participating by teleconference.

In the spring of 2023, OptioRx did not pay Patel and other management employees their earned 2022 bonuses. On July 10, 2023, Nayyar directly negotiated with Patel about her 2022 annual bonus, asking her to accept a $500,000 bonus instead of the maximum possible $800,000 bonus allowed for in her employment agreement. After this discussion, Patel asked the Board to set metrics for the 2023 bonuses. She proposed such metrics on August 16, 2023, which the Board accepted.

In December 2023, Best and Kelly informed Patel that they had hired an industry consultant, Ben David, who had previously been the CEO of Wells Pharmacy Network. After meeting with Patel on December 6, 2023, Best and David requested hundreds of documents related to OptioRx, including financials, board materials, payroll records, and diligence information. Best and David then wrote an analysis, which the Board discussed with Patel and OptioRx's management team on December 21, 2023. The Individual Defendants attended this

meeting by video. During the meeting, David and the Individual Defendants pressured Patel to compound drugs with non-FDA approved ingredients in facilities that did not have approval to compound such products. The Individual Defendants criticized Patel for attempts to improve OptioRx's regulatory health because they resulted in lower profits for OptioRx. Despite David's and the Board's instructions, Patel refused to compound products with unapproved FDA ingredients and, with the help of the OptioRx management team, authored an eighty-page rebuttal to David's analysis. The Board did not acknowledge or respond to the rebuttal. Instead, on January 24, 2024, OptioRx hired David as its executive chairman. Tunis and Kelly informed Patel that OptioRx needed "fresh blood," and that David would oversee OptioRx's compounding and retail businesses. *Id.* ¶ 90.

Then, on February 5, 2024, OptioRx terminated Patel's employment. Kelly and Tunis called Patel and indicated that they "plan[ned] to honor [her] employment contracts and severance." *Id.* ¶ 94. Patel received a severance agreement on February 16, 2024, and her counsel engaged in negotiations with OptioRx over its terms. In the midst of these negotiations, on March 20, 2024, OptioRx's counsel agreed that OptioRx would pay for Patel's independent legal representation if she participated in a deposition on OptioRx's behalf. After she sat for the deposition, OptioRx reneged on its agreement and did not reimburse Patel's counsel. On May 1, 2024, Patel's counsel informed OptioRx that Patel accepted the latest version of the severance agreement, but OptioRx's counsel responded that it would no longer honor Patel's employment agreement or execute a severance agreement for her benefit.

OptioRx declared bankruptcy in June 2024. To date, Patel has not received her 2023 bonus payment, severance pay and benefits, vested equity, or reimbursement for the legal expenses she accrued on OptioRx's behalf.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1. However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[ ] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

**ANALYSIS**

In diversity cases, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois allows for personal jurisdiction to the full extent authorized by the Illinois and United States Constitutions. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). This standard effectively merges the federal constitutional and state statutory inquiries. *N. Grain Mktg.*, 743 F.3d at 492. Accordingly, a single inquiry into

7

whether the United States Constitution permits jurisdiction suffices. *See, e.g.*, *Curry*, 949 F.3d at 393; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756–57 (7th Cir. 2010).

The Due Process Clause of the United States Constitution permits a court to exercise jurisdiction when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). And importantly, "the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023); *see also Purdue*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity").

Personal jurisdiction comes in two forms: general and specific.[3] *See Daimler AG v. Bauman*, 571 U.S. 117, 126–28 (2014); *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). Defendants argue that they are not subject to either general or specific jurisdiction in Illinois. The Court addresses each in turn.

I. **General Jurisdiction**

General jurisdiction arises when a defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416

---

[3] The Supreme Court has recently emphasized that a third method of establishing personal jurisdiction exists where a defendant has consented to suit in the forum. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023). Because Patel has abandoned any argument that Defendants consented to suit in Illinois in the employment agreement, the Court need not address the implications of *Mallory* further.

(1984). Under this "demanding standard," a defendant is subject to general jurisdiction only where its contacts with the forum state are so "continuous and systematic" that it can be considered "at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421. 426 (7th Cir. 2010); *see also Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) ("The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence.").

For corporate defendants, "the [Supreme] Court has identified only two places where [a corporation is essentially at home]: the state of the corporation's principal place of business and the state of its incorporation." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (citing *Daimler*, 571 U.S. at 137). But the Supreme Court left open the possibility that "in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation omitted). Here, Pharmacy Management is incorporated in Delaware and has its principal place of business in Connecticut. And the Court has no information as to Pharmacy Management's operations in their entirety to allow it to determine whether Pharmacy Management has such substantial operations in Illinois to render it at home here. *See id.* at 406, 413, 414 (finding no general personal jurisdiction over company that had two thousand employees in the state in part because these employees represented less than five percent of the company's total work force); *Patera v. Bartlett*, No. 15 C 50190, 2016 WL 773225, at *3 (N.D. Ill. Feb. 29, 2016) ("Plaintiff has not made any allegations as to the . . . Defendants' 'activities in their entirety.' She has only made allegations concerning the . . . Defendants' Illinois activities. These allegations are insufficient to make a prima facie showing

9

of general jurisdiction."); *Hayward v. Taylor Truck Line, Inc.*, No. 15-cv-00866, 2015 WL 5444787, at *5 (N.D. Ill. Sept. 14, 2015) ("[Plaintiffs'] focus on [defendant's] contacts with Illinois . . . lack the relevant nationwide context necessary for the Court to conduct a proper analysis under *Daimler* and *Goodyear*."). Therefore, the Court cannot find that general jurisdiction exists over Pharmacy Management in Illinois.

As for the Individual Defendants, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler*, 571 U.S. at 137. However, similar to the inquiry for corporations, in "exceptional" cases, a person's contacts may be so substantial to render them essentially at home in a different state. *Id.* at 139 n.19. Here, none of the Individual Defendants live or work in Illinois, nor do they have bank accounts, property, or offices in Illinois. While some of them visited Illinois for business on several occasions, this does not suffice to make them "at home" in Illinois for purposes of general jurisdiction. *See Heritage Vintage Invs., LLC v. KMO Dev. Grp., Inc.*, No. 15 C 5582, 2015 WL 12838162, at *3 (N.D. Ill. Dec. 11, 2015) (declining to exercise general jurisdiction over defendant who "regularly conducted business in Illinois" and "traveled to Illinois regularly over the past 15 years" because those contacts were not "substantial enough" to render defendant at home in Illinois); *Turnbeaugh v. Bd. of Certified Safety Pros.*, No. 1:22-CV-887, 2023 WL 2139820, at *4 (S.D. Ind. Feb. 21, 2023) ("Systematic and continuous contacts with Indiana aren't enough for general personal jurisdiction over natural persons when it's undisputed that they were domiciled elsewhere — their domiciles determine general personal jurisdiction.").

**II.     Specific Jurisdiction**

Specific jurisdiction arises "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chi.,*

*LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010); *see also Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself."). For purposes of specific jurisdiction, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014). A defendant is not subject to jurisdiction solely because the plaintiff suffered injury in the forum state. *Id.* at 802. Instead, to establish specific jurisdiction over Defendants, Patel must show that "(1) [Defendants] purposefully directed [their] activities at the forum state or purposefully availed [themselves] of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to [Defendants'] forum-related activities; and (3) any exercise of personal jurisdiction . . . comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

There is no "'pendant' or 'supplemental' theory of specific personal jurisdiction," and so "personal jurisdiction over the defendant must be established as to each claim asserted." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 164 F. Supp. 3d 1040, 1048–49 (N.D. Ill. 2016) (rejecting plaintiffs' attempts to establish personal jurisdiction over defendants by invoking similarities between defendants' conduct against other plaintiffs that established specific jurisdiction and defendants' conduct against other plaintiffs that was related to conduct that created personal jurisdiction); *see also Zivitz v. Greenburg*, No. 98 C 5350, 1999 WL 984397, at *7 n.3 (N.D. Ill. Oct. 25, 1999) (common claims against multiple defendants could only proceed where personal jurisdiction existed independently for each claim

over each defendant). The Court thus considers the contacts of each defendant separately,[4] and then also looks to whether exercising jurisdiction over them in this district comports with traditional notions of fair play and substantial justice.

### A. Individual Defendants

Despite their protestations, the Individual Defendants all had sufficient contacts with Illinois related to Patel's IWPCA and IWA claims. Best, Kelly, and Tunis served on the Board. Nayyar, as the managing director and chief investment officer of MCCP, interacted frequently with Patel. Kelly and Nayyar interviewed Patel for the CEO position. Nayyar instructed Patel to terminate OptioRx's former management team, telling Patel when she pushed back that MCCP was "the board" and did not "need anyone's permission" to take actions for OptioRx. Doc. 19 ¶ 34. Best, Kelly, and Tunis attended various Board meetings, with Best and Kelly often attending in person at OptioRx's offices in Illinois. Patel also alleges that she had biweekly calls with the Individual Defendants to discuss OptioRx's operations, financial status, structure, and challenges. And Nayyar directly negotiated Patel's 2022 annual bonus, while the Board, to which Best, Kelly, and Tunis belonged, set the metrics for Patel's 2023 annual bonus.

Patel also alleges that Best and Kelly retaliated against her for attempting to address regulatory compliance issues, including by hiring an industry consultant who ultimately replaced Patel as CEO of OptioRx. Best helped draft an analysis of OptioRx's management team, and the Individual Defendants all attended a meeting to address that report. At that meeting, Patel alleges that the Individual Defendants pressured her to take certain actions and openly criticized her efforts to improve OptioRx's regulatory health. Kelly and Tunis then told Patel on January

---

[4] Defendants argue that the Court cannot impute OptioRx's contacts to them because a sufficiently close relationship does not exist to show that Pharmacy Management, MCCP, or the Individual Defendants effectively did business through OptioRx so as to treat OptioRx as their subsidiary. But the Court need not reach the question of whether it can impute OptioRx's contacts with Illinois to any of the Defendants because Patel alleges that each of the Defendants had contacts of their own with Illinois.

29, 2024, that OptioRx needed "fresh blood," taking away certain areas from Patel's supervision and giving them to David. *Id.* ¶ 90. On February 5, 2024, upon Patel's termination, Kelly and Tunis told her that they would honor her employment contracts and severance.

These allegations, which the Individual Defendants have not controverted, sufficiently suggest that the Individual Defendants purposefully directed activities at Illinois by dictating and controlling OptioRx's operations and Patel's employment conditions. *See, e.g.*, *Beattie v. Emerald Expositions*, No. 22-CV-05202, 2024 WL 4346634, at *5 (N.D. Ill. Sept. 30, 2024) (personal jurisdiction existed over defendant with respect to IWPCA claim where defendant "changed the course of [plaintiff's] pay situation via an email" and "by at least one follow-up e-mail and phone call"); *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 1996590, at *5 (N.D. Ill. May 17, 2010) (providing assistance to subsidiary to formulate policies indicates purposeful availment of forum); *cf. Farmer v. DirectSat USA, LLC*, No. 08-CV-3962, 2010 WL 380697, at *8 (N.D. Ill. Jan. 28, 2010) (refusing to find personal jurisdiction over three individuals where the complaint did not include allegations tying those individuals to Illinois employees or suggesting that they implemented policies that impacted Illinois employees). The fact that the Individual Defendants did not have a great physical presence in Illinois does not matter; Patel alleges that the Individual Defendants had regular and consistent communication with OptioRx and its employees, including Patel, which they directed at Illinois. *See Tamburo*, 601 F.3d at 706 ("[A]lthough they acted from points outside the forum state, these defendants specifically aimed their tortious conduct at [the plaintiff] and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there."); *Leong v. SAP Am., Inc.*, 901 F. Supp. 2d 1058, 1063–64 (N.D. Ill. 2012) (subjecting human resources officer to jurisdiction in Illinois, despite the fact that she never physically traveled to Illinois,

because she "made decisions regarding" the plaintiff's "compensation and employment which she knew would affect [the plaintiff]'s job in Illinois"); *Moderson v. MFK Mobilelink Wis., LLC*, 630 F. Supp. 3d 1059, 1072 (E.D. Wis. 2022) ("[S]pecific personal jurisdiction can exist based on even only a mere few instances of communication directed to the forum state where the communication(s) relate to the subject matter of the action and demonstrate(s) a purposeful invocation of the benefits and protections of the forum state."). Additionally, the Individual Defendants' contacts relate to Patel's claims, given that she complains about her failure to receive owed compensation and retaliatory actions that the Individual Defendants allegedly took against her. Therefore, the Individual Defendants have sufficient minimum contacts related to Patel's claims to subject them to jurisdiction in Illinois.

### B. Pharmacy Management

Similarly, the Court finds that Patel has shown that Pharmacy Management purposefully directed activity at Illinois related to her claims. Pharmacy Management served as OptioRx's manager and so controlled OptioRx's operations. Patel's employment agreement provided that she reported directly to OptioRx's manager, in other words, to Pharmacy Management. And according to the complaint, allegations which Defendants have not contested, Pharmacy Management's Board operated as OptioRx's Board. The Board addressed OptioRx's business, finances, operations, sales, quality, risks, human resources, and development. It also exercised control over Patel's bonus and called a meeting with Patel and OptioRx's management team to discuss OptioRx's future in December 2023. Finally, the Court can impute Best, Kelly, and Tunis' contacts with Illinois on behalf of the Board to Pharmacy Management. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021) (holding that "the attribution of an agent's conduct to a principal to establish specific personal jurisdiction comports with federal due process"). With

14

OptioRx and Patel both based in Illinois, these contacts sufficiently suggest that Pharmacy Management purposefully directed its actions at Illinois. And because Pharmacy Management's contacts relate to Patel's employment and her right to compensation, they sufficiently tie Pharmacy Management to the claims at issue.

## C. Fair Play and Substantial Justice

Having found the required minimum contacts, the Court must also evaluate whether maintaining personal jurisdiction over Defendants offends the traditional notions of fair play and substantial justice. In doing so, the Court considers the burden on Defendants, Illinois' interest in adjudicating the dispute, Patel's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution, and the shared interest of the several States in furthering fundamental substantive social policies. *See Curry*, 949 F.3d at 402. When a plaintiff "has made a threshold showing of minimum contacts" as Patel has done here, "that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Defendants have not met this burden. While Defendants operate outside of Illinois, "inconvenience is not a dispositive factor because modern technology and transportation allow [them] to litigate with relative ease anywhere in the United States." *Lab Verdict, Inc. v. Lab Equip Ltd.*, 436 F. Supp. 3d 1181, 1189–90 (S.D. Ind. 2020). Nor is there any indication "that the exercise of personal jurisdiction here would undermine any substantive social policies." *Id.* Instead, "[b]y reaching out to someone in Illinois, [Defendants] 'should have reasonably anticipated being haled into court in Illinois.'" *Costa v. Ramaiah*, 689 F. Supp. 3d 553, 572 (N.D. Ill. 2023) (quoting *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 764 (7th Cir. 2008)).

15

### D. Fiduciary Shield Doctrine

This does not end the inquiry for the Individual Defendants, however, as they also invoke the fiduciary shield doctrine as a bar to jurisdiction over them in Illinois. The fiduciary shield doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994). The Individual Defendants argue that they only acted in their corporate capacities in their dealings with Patel.

The fiduciary shield doctrine is discretionary, not absolute. *Sommese v. Am. Bank & Tr. Co., N.A.*, No. 11-CV-2827, 2012 WL 3006824, at *3 (N.D. Ill. July 23, 2012). Two exceptions exist: (1) where an individual's personal interests motivated the actions, and (2) where the individual's actions were discretionary. *Leong*, 901 F. Supp. 2d at 1064. The Individual Defendants focus on the first exception, whether Patel sufficiently alleges that they acted for personal, not corporate, reasons. But the Court need not reach this question because Patel also alleges that the Individual Defendants had discretion in their management of OptioRx, including making decisions about her employment and compensation. The Individual Defendants have not controverted these allegations via affidavit. Therefore, Patel's allegations of discretion suffice at this stage to preclude application of the fiduciary shield doctrine. *See Urb. 8 Danville Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, No. 19 C 03171, 2020 WL 3058101, at *6 (N.D. Ill. June 9, 2020) (refusing to apply fiduciary shield doctrine to asset manager with discretion in how it managed a partnership's limited partners' investment); *Barker v. Atl. Pac. Lines*, No. 13 C 1272, 2013 WL 4401382, at *5 (N.D. Ill. Aug. 14, 2013) (finding that a defendant could not rely on the fiduciary shield doctrine where his "dual role as president and owner provided him with discretionary authority over personnel matters"); *Leong*, 901 F. Supp. 2d at 1065 (refusing to

16

apply the fiduciary shield doctrine to human resources officer who "had control and discretion over [the plaintiff's] compensation, the conditions of her employment, and [the company's] response to [the plaintiff's] complaints of unequal pay"). To the extent that discovery does not bear out Patel's allegations as to the Individual Defendants' involvement in the decisions related to her compensation and termination, the Individual Defendants may again move for dismissal based on the fiduciary shield doctrine at a later date. *See Sommese*, 2012 WL 3006824, at *5.

In summary, the Court finds that it has specific personal jurisdiction over Defendants, meaning that Patel's claims can proceed to discovery.[5]

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss [20].

Dated: March 31, 2025

SARA L. ELLIS
United States District Judge

---

[5] The Court expresses no opinion on the merits of Patel's claims against Defendants. While Defendants raise an argument in a footnote that Patel's IWPCA claims cannot survive because they are subject to discharge in bankruptcy, the Court cannot consider such undeveloped arguments at this time. *See Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("[A] party can waive an argument by presenting it only in an undeveloped footnote."); *Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 770 n.1 (N.D. Ill. 2010) ("Undeveloped arguments and arguments raised in footnotes are waived."). To the extent that Defendants had any potential arguments for dismissal of the complaint at the pleading stage, they should have joined those arguments to their Rule 12(b)(2) motion. Fed. R. Civ. P. 12(g).