**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| RINKU PATEL, PHARMD,<br><br>                Plaintiff,<br><br>       v.<br><br>CBC PHARMA HOLDCO LLC,<br>PHARMACY MANAGEMENT LLC,<br>ASHOK NAYYAR, an individual, JEFFREY<br>KELLY, an individual, JONATHAN TUNIS,<br>an individual, BARRY BEST, an individual,<br><br>                Defendants. | Case No. 1:24-cv-8110<br><br>Hon. Sara L. Ellis |

**DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT DUE
TO PLAINTIFFS' RELEASE OF CLAIMS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ...........................................................................................................3

ARGUMENT ................................................................................................................6

    I.      Applicable Standard. ................................................................................ 6

    II.     The Release is Valid and Enforceable, and Requires Dismissal of Plaintiff's
         Claims ................................................................................................... 7

    III.    The IWPCA Claims Can Be, and Were, Released By Plaintiff............................... 13

CONCLUSION.............................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*,
   877 F.3d 742 (7th Cir. 2017) ............................................................................6, 7

*Anderson v. Dimon*,
   2020 WL 6392814 (D. Del. Nov. 2, 2020) ...............................................................8

*Caberera v. Sas*,
   777 F. Supp. 3d 900 (2025) ...........................................................................12

*Cole v. Danberg*,
   2024 WL 4151514 (D. Del. July 31, 2024) ...............................................................8

*In re First Farmers Fin. Litig.*,
   2016 WL 6647923 ..................................................................................7

*Forbus v. CF Remodeling, LLC*, 2024 WL 3678231, at *2 n.1 (S.D. Ill. July 22,
   2024) ...........................................................................................14

*Graham v. Village of Dolton*,
   2023 WL 3563220 (1st Dist. May 19, 2023)..............................................................14

*Iannotti v. Wood Grp. Mustang*,
   2023 WL 6217061 (S.D. Ill. Sept. 25, 2023)..............................................................14

*Integrated Genomics, Inc. v. Kyrpides*,
   2010 WL 375672 (N.D. Ill. Jan. 26, 2010)...............................................................13

*Kitchner v. Fiergola*,
   2018 WL 4473359 (E.D. Wisc. Sept. 18, 2018)...........................................................12

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
   2001 WL 1403007 (N.D. Ill. Nov. 9, 2001) ..............................................................13

*Lewis v. Giordano's Enters.*,
   397 Ill. App. 3d 581 (1st Dist. 2009) ...................................................................13

*People ex rel. Martin v. Lipkowitz*,
   225 Ill. App. 3d 980 (3d Dist. 1992).....................................................................13

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) ...........................................................................6

*Mueller Co. v. Dep't of Labor*,
187 Ill. App. 3d 519 (4th Dist. 1989)......................................................................................13

*Nelson v. La Crosse Cnty. Dist. Atty. (State of Wisc.)*,
301 F.3d 820 (7th Cir. 2002) ..................................................................................................15

*O'Brien v. Encotech Constr. Servs.*,
183 F. Supp. 2d 1047 (N.D. Ill. 2002) ....................................................................................13

*Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*,
956 F.2d 152 (7th Cir. 1992) ..................................................................................................15

*In re Optio Rx, LLC*,
Case No. 24-11188 (TMH) (Bankr. D. Del.)............................................................................4

*Patrick v. Ellis*,
2013 WL 5800908 (Del. Sup. Oct. 18, 2013)...........................................................................8

*Pierce v. Atchison, T. & S.F. Ry.*,
65 F.3d 562 (7th Cir. 1995) ....................................................................................................10

*Polansky v. Forest River, Inc.*,
2024 WL 4785179 (N.D. Ind. Nov. 13, 2024)...........................................................................7

*REM OA Holdings, LLC v. N. Gold Holdings, LLC*,
2023 WL 6143042 (Del. Ch. Sept. 20, 2023) ...........................................................................7

*Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*,
2012 WL 1409013 (Del. Sup. Apr. 4, 2012) ..........................................................................10

*Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*,
68 A.3d 665 (Del. 2013) ...........................................................................................................9

*Shields v. Keystone Cogeneration Sys., Inc.*,
620 A.2d 1331 (Del. Super. 1992).............................................................................................8

*Tradex Global Fund SPC Ltd. v. Solaris Opportunity Fund L.P.*,
2025 WL 2144796 (1st Dist. July 29, 2025)............................................................................10

*Vandenberg v. Brunswick Corp.*,
90 N.E.3d 1048 (1st Dist. 2017) .......................................................................................10, 11

*Washington v. Cook Cnty.*,
2025 WL 964512 (N.D. Ill. Mar. 31, 2025).............................................................................14

*Wehmeier v. UNR Indus., Inc.*,
213 Ill. App. 3d 1095 (4th Dist. 1990)....................................................................................15

iii

*In re Xpedior Inc.*,
   354 B.R. 210 (Bankr. N.D. Ill. 2006) ...................................................................................14

*Yash Venture Holdings, LLC v. Moca Fin., Inc.*,
   116 F.4th 651 .........................................................................................................................6

*Yassan v. J.P. Morgan Chase & Co.*,
   708 F.3d 963 (7th Cir. 2013) ................................................................................................7

**Statutes**

Bankruptcy Code ...........................................................................................................4, 10, 14

Fair Labor Standards Act ("FLSA") ..................................................................................3

Illinois Wage Payment and Collection Act ("IWPCA")......................................... *passim*

Illinois Whistleblower Act.................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 8(c)(1)..........................................................................................................7

iv

Defendants Ashok Nayyar, Jeffrey Kelly, Jonathan Tunis, Barry Best (collectively, the "Individual Defendants"), and Pharmacy Management LLC ("Pharmacy Management" and, together with the Individual Defendants, the "Defendants")[1] respectfully submit this motion to dismiss the Second Amended Complaint, ECF No. 19 ("SAC"), of Plaintiff Rinku Patel ("Plaintiff") based on Plaintiff's release of her claims against Defendants (the "Motion").

## PRELIMINARY STATEMENT

As this Court is aware, this matter involves claims asserted by Plaintiff against the former managers of Optio Rx, LLC ("Optio Rx") and several individual defendants, three of whom served on Pharmacy Management's board of managers.[2] In or around February 2022, Plaintiff was hired by Optio Rx to serve as its Chief Executive Officer. She was terminated barely two years later, in February 2024, after a disastrous tenure in that role. Plaintiff was hired to steer Optio Rx toward operational and commercial success; however, her leadership failures exacerbated the Company's financial difficulties and ultimately resulted in Optio Rx having to file for Chapter 11 bankruptcy protection in June 2024 (the "Bankruptcy Matter") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On August 6, 2025, the Honorable Thomas M. Horan of the Bankruptcy Court entered an Order in the Bankruptcy Matter approving a stipulation negotiated between the debtors and Plaintiff, each represented by high sophisticated and experienced counsel (the "Stipulation") that, among other things, (i) granted Plaintiff a broad, general release of any and all claims including,

---

[1] Undersigned counsel do not represent CBC Pharma in this action.

[2] In the SAC, Plaintiff has asserted claims (i) under the Illinois Wage Payment and Collection Act ("IWPCA"), for purported unpaid categories of compensation; (ii) for retaliatory discharge under the Illinois Whistleblower Act; and (iii) for breach of contract based on her employment agreement with Optio Rx. *See generally* SAC (ECF No. 19). Plaintiff subsequently withdrew her breach of contract claims (Counts VI through VIII). *See* ECF No. 49.

1

without limitation, claims of negligence, (ii) fixed and allowed a general unsecured claim by Plaintiff in the amount of $1.5 million, and (iii) allowed a priority claim by Plaintiff in the amount of $13,000 which was promptly paid and received by Plaintiff. Importantly, the Stipulation also (i) contained a highly negotiated release by Plaintiff of any and all claims she may have against Optio Rx, its affiliated debtors, and "each of their respective present and former shareholders and its and their respective officers, directors, partners, members, managers, employees, agents, attorneys, and shareholders, and their successors, assigns and other representatives" (the "Mutual Release"), and (ii) confirmed the counsel executing the Stipulation "has been duly authorized and empowered to execute, deliver and perform its obligations under" the Stipulation. *See* ECF No. 68-1 at ¶¶ 2, 3, 6, 7.

Plaintiff has been represented in the Bankruptcy Matter by Maria Aprile Sawczuk of Goldenstein & McClintock LLP since July 2024, the same counsel who negotiated and executed the Stipulation on her behalf. ECF No. 64-1 at ¶ 4. There is no possible dispute that Plaintiff's bankruptcy counsel was well aware of this litigation while negotiating the Stipulation since, among other things, she represented Plaintiff in connection with the motion to enforce the automatic stay filed by Optio Rx and the other debtors in response to Plaintiff's naming Optio Rx as a defendant in her original complaint in violation of the automatic stay back in July 2024 (for which Plaintiff was sanctioned). *See* ECF No. 68-4. Given the clear and unambiguous language of this broad release, the valuable consideration she received, and her representation by competent and experienced counsel, Plaintiff indisputably released her claims against Defendants.

Notwithstanding the unambiguous scope of the Mutual Release, the inherent authority of the Bankruptcy Court to approve third-party releases, and this Court's authority to enforce such releases, Plaintiff has refused to dismiss her claims. According to Plaintiff, she did not understand

2

that her claims in this matter fell within the scope of the Mutual Release, despite its broad language clearly referencing each of the Defendants (as she herself identified them in her Complaint).[3] Plaintiff's belated assertion, which is nothing more than a claim of unilateral mistake, is not a basis for this Court (or the Bankruptcy Court) to refuse to enforce the Mutual Release, or to reform the Stipulation to suit Plaintiff's whims. Plaintiff further contends that a privately negotiated release of an IWPCA claim somehow is void as a matter of state law and/or "public policy," no matter how negotiated, agreed-to, or approved.[4] That position is entirely unsupported under the circumstances presented here and disregards basic tenets of federal preemption and contract law. Defendants respectfully submit that Plaintiff is bound by the unambiguous terms of the Stipulation (including the Mutual Release), which requires dismissal of Plaintiff's claims against the Defendants with prejudice.

## BACKGROUND

Plaintiff was employed as the CEO of Optio Rx from approximately February 1, 2022, to February 5, 2024. SAC ¶¶ 8, 25. She executed an employment agreement which was signed by CBC Pharma HoldCo, LLC and Cold Bore Capital Management, LLC, on behalf of Optio Rx. *See* SAC ¶ 28, Ex. A. In November of 2022, Pharmacy Management replaced Cold Bore and CBC Pharma as Optio Rx's manager. SAC ¶ 152.

---

[3] In the SAC, Plaintiff identifies Defendants as (i) Pharmacy Management, "the sole manager of Optio Rx"; (ii) the Individual Defendants, who served as members of the board of Optio Rx and/or the board of Pharmacy Management; and (iii) the managing directors of Optio Rx's senior lender. *See* ECF No. 19 at ¶¶ 5, 12–16, 36, 38, 41. All plainly fall within the scope of the Release.

[4] At the September 24, 2025, status conference, Plaintiff's counsel attempted to argue the Mutual Release was invalid as to Plaintiff's statutory wage claims because a court must approve it (referencing the Fair Labor Standards Act (the "FLSA")). Declaration of Joseph A. Piesco, Jr., Esq. ("Piesco Decl."), Ex. A (Transcript of September 24, 2025, Telephonic Hearing) at 7:23-25. But Plaintiff does not have an FLSA claim. And there is no legal authority to support the notion that an Illinois (or any) court has to approve a party's agreement to release a state law wage claim.

Funds managed by MC Credit Partners LP ("MCCP"), together with other institutional investors, were Optio Rx's senior lenders prior to its bankruptcy. ECF No. 22 at ¶ 6. Three of the Individual Defendants—Kelly, Tunis, and Best—are MCCP employees who served on Pharmacy Management's Board of Managers. *Id.* at ¶ 7. Nayyar is MCCP's Managing Director and Chief Investment Officer. *Id.* at ¶ 7.

Optio Rx filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court on June 7, 2024. *See In re Optio Rx, LLC*, Case No. 24-11188 (TMH) (Bankr. D. Del.) at ECF No. 1. On July 30, 2024, Optio Rx filed a motion to enforce the automatic stay provided by the Bankruptcy Code (the "Automatic Stay Motion"), because Plaintiff named Optio Rx as a defendant in her original complaint. Piesco Decl. at Ex. B (Motion to Enforce the Automatic Stay and for Related Relief). On August 20, 2024, Plaintiff (represented by her sophisticated and experienced bankruptcy counsel) filed an opposition to the Automatic Stay Motion. *See* ECF No. 68-4. On September 16, 2024, the Bankruptcy Court entered an order granting the Automatic Stay Motion, imposing sanctions against Plaintiff. *See* ECF No. 68-5.

On August 6, 2025, the Bankruptcy Court entered an order approving the Stipulation which included the Mutual Release. The Mutual Release provides, in pertinent part:

> Upon the Stipulation Effective Date, except for the obligations set forth in this Stipulation, Dr. Patel, on behalf of herself and all parties claiming by, through or under her, hereby release and forever discharge the Reorganized Debtors, the Reorganized Debtors' estates (including any and all predecessors and affiliates), and each of their respective present and former shareholders and its and their respective officers, directors, partners, members, managers, employees, agents, attorneys, and shareholders, and their successors, assigns and other representatives from any and all claims, controversies, actions, causes of action (including, without limitation, all claims, controversies, actions and causes of action arising under state or federal law including chapter 5 of the

4

Bankruptcy Code or regulations), demands, debts, damages, losses, costs, attorneys' fees, expenses, monies due on account, obligations, judgments and liabilities of any nature whatsoever at law or in equity, past or present, in contract, in tort or otherwise, reported or unreported, fixed or contingent, accrued or unaccrued, liquidated or unliquidated, whether or not now or heretofore known, suspected, or claimed.

ECF No. 68-1 at ¶ 7. The Stipulation included a broad mutual general release from Optio Rx (and its related reorganized debtors, "and all parties claiming by, through or under them") in favor of Plaintiff, *id.* at ¶ 6, and also allowed (*i.e.*, approved for payment from the debtor's estate) and fixed certain seven figure claims filed by Plaintiff against Optio Rx in the Bankruptcy Matter. *Id.* at ¶ 2. The Stipulation expressly provides that "***[t]he person who executes this Stipulation by or on behalf of each respective party represents and warrants that he or she has been duly authorized and empowered to execute, deliver and perform its obligations under this Stipulation on behalf of such party***." *Id.* at ¶ 3 (emphasis added). Plaintiff's counsel—the same attorney who has represented her throughout the Bankruptcy Matter—signed the Stipulation.

Plaintiff now asserts in this Court that she subjectively "believed that the Bankruptcy Stipulation only released Claim No. 72" in the Bankruptcy Matter, and that she "never intended or agreed to release the claims pending in this Court." ECF No. 64-1 at ¶¶ 7, 9. While Plaintiff initially stated (in a sworn Affidavit) that she "never was sent or reviewed the Bankruptcy Stipulation," *id.* at ¶ 6, her counsel subsequently confirmed this representation was inaccurate, and that Plaintiff *was* sent a copy of the Stipulation by her bankruptcy counsel by email. Now Plaintiff claims she simply failed to review it.[5] *See* Piesco Decl., Ex. A at 4:22–5:7.

On September 24, 2025, a few hours prior to the status conference before this Court,

---

[5] Plaintiff is not claiming—here or in the Bankruptcy Court—that she did not authorize her bankruptcy counsel to execute the Stipulation on her behalf. She simply claims she did not know or understand that she was releasing her claims in this action.

5

Plaintiff filed a motion in the Bankruptcy Court seeking either to rescind the Stipulation, or to have it modified such that her claims in this Court would be deemed outside the scope of the broad Mutual Release (essentially the same relief Plaintiff sought in this Court through her Motion to Clarify Bankruptcy Stipulation and to Extend the Deadline for Fact Discovery Close (ECF No. 64) (the "Status Conference Motion")). *See* Piesco Decl., Ex. C (Motion to Rescind Settlement Agreement and/or Modify or Set Aside Order Approving Stipulation By and Between Reorganized Debtors and Dr. Rinku Patel Regarding Proof of Claim No. 72) (the "Bankruptcy Motion"). Importantly, in the Bankruptcy Motion Plaintiff concedes the enforcement of the Stipulation's Mutual Release would have the effect of "waiving claims . . . against non-debtor parties," and asserts she "never understood or had reason to expect that her far larger claims against solvent non-debtors were being waived" in connection with the Stipulation. *See id.* at ¶ 22(a).

**ARGUMENT**

**I.      Applicable Standard.**

"To survive a motion for judgment on the pleadings (or a motion to dismiss), the complaint must 'state a claim to relief that is plausible on its face.'" *ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept any well-pleaded facts in the Complaint as true, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). In adjudicating a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 659 n.11 (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)). The existence of a release barring a plaintiff's claims

6

"is an affirmative defense under Fed. R. Civ. P. 8(c)(1)." *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013). Accordingly, "if a release bars plaintiff's claims, whether the complaint states a claim does not matter." *ADM All. Nutrition, Inc*, 877 F.3d at 746.

## II. The Mutual Release is Valid and Enforceable, and Requires Dismissal of Plaintiff's Claims

### A. Delaware Law Applies to this Dispute, and Requires the Mutual Release be Enforced

Initially, given that the Stipulation was executed in connection with the Bankruptcy Matter pending in Delaware, Delaware law—not Illinois law—should apply to the enforceability of the Mutual Release.[6] Delaware is a "contractarian state" that "recognizes that parties have a right to enter into good and bad contracts and enforces both." *REM OA Holdings, LLC v. N. Gold Holdings, LLC*, 2023 WL 6143042, at *19 (Del. Ch. Sept. 20, 2023) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010)). "The presumption that parties are bound by the language of the agreement they sign applies with even greater force when the parties are sophisticated and engaged in arms-length negotiations[,]" and such presumption "is particularly strong when sophisticated parties are represented by counsel." *Rem OA Holdings, LLC*, 2023 WL 6143042, at *19 (quoting *W. Willow Bay Court, LLC v. Robino Bay Court Plaza, LLC*, 2007 WL 3317551, at *9 (Del. Ch. Nov. 2, 2007), and *Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505, at *4 (Del. Ch. Apr. 27, 2004)).

---

[6] "Generally, a court sitting in diversity applies the choice-of-law rules of the state in which it sits." *Polansky v. Forest River, Inc.*, 2024 WL 4785179, at *1 (N.D. Ind. Nov. 13, 2024) (citing *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009)). "Illinois courts apply the 'most significant contacts' test from Section 188(2) of the Restatement [of Contracts]." *In re First Farmers Fin. Litig.*, 2016 WL 6647923, at *3 (citing *Auto-Owners Ins. Co.*, 580 F.3d at 547). Given the Stipulation was negotiated and filed in connection with Plaintiff's claims in the Bankruptcy Matter pending in Delaware (which is where Optio Rx is incorporated), the contacts factors weigh heavily in favor of applying Delaware law. *See In re First Farmers Fin. Litig.*, 2016 WL 6647923, at *3 (citing *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004)).

Furthermore, "[w]here an attorney of record accepts a settlement offer on behalf of his client . . . a binding contract is created" and the attorney "is presumed to have the lawful authority to make such an agreement." *Cole v. Danberg*, 2024 WL 4151514, at *3 (D. Del. July 31, 2024) (quoting *Williams v. Chancellor Care Ctr. of Delmar*, 2009 WL 1101620, at *3 (Del. Sup. Apr. 22, 2009)); *see also Shields v. Keystone Cogeneration Sys., Inc.*, 620 A.2d 1331, 1335 (Del. Super. 1992) (confirming that "[a]n agreement entered into by an attorney is presumed to have been authorized by his client to enter into the settlement agreement"). Moreover, "a general release that is 'clear and unambiguous' is enforceable unless the plaintiff can demonstrate that there was 'fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries.'" *Anderson v. Dimon*, 2020 WL 6392814, at *5 n.4 (D. Del. Nov. 2, 2020) (quoting *Edge of the Woods v. Wilmington Sav. Fund Soc'y*, 2000 WL 305448, at *4 (Del. Super. Ct. Feb. 7, 2000)); *Patrick v. Ellis*, 2013 WL 5800908, at *4 (Del. Sup. Oct. 18, 2013).

Plaintiff does not—and cannot—present any evidence of "fraud, duress, coercion, or mutual mistake." The Stipulation was heavily negotiated between sophisticated parties represented by experienced counsel, and approved by the Bankruptcy Court. ECF No. 68-1. In the Status Conference Motion, Plaintiff argued that she did not "authorize" the Stipulation and Mutual Release (because she didn't understand its scope to include her claims in this case). *See* ECF No. 64 at ¶¶ 17-18; ECF No. 64-1 at ¶¶ 7, 9–11. However, the Stipulation expressly states that "***[t]he person who executes this Stipulation by or on behalf of each respective party represents and warrants that he or she has been duly authorized and empowered to execute, deliver and perform its obligations under this Stipulation on behalf of such party***." ECF No. 68-1 at ¶ 3 (emphasis added). Moreover, there is a significant difference between authorizing your counsel to execute a contract on your behalf (which is what Plaintiff did), on the one hand, and supposedly not

8

understanding what the ramifications of the contract are, on the other (which is what Plaintiff is arguing). And, although Plaintiff initially swore she never received a copy of the Stipulation, her counsel subsequently acknowledged that Plaintiff received a copy of the Stipulation from her bankruptcy counsel—she just failed to read it. *See* Piesco Decl., Ex. A at 4:22–5:7.

Defendants expect, based on her Status Conference Motion and Bankruptcy Motion, that Plaintiff intends to argue that the Mutual Release should be voided or reformed because she did not understand that her claims in this case were encompassed within the scope of the Mutual Release. But the law does not permit such relief. Courts do not unwind or reform a contract because a party failed to comprehend what she was agreeing to. There is no doubt that both Plaintiff and her multiple sets of counsel were well aware of this case.

Under Delaware law, "reformation based on unilateral mistake is available" only "where a party can 'show that it was mistaken and that the other party knew of the mistake but remained silent.'" *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 679 (Del. 2013) (quoting *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002)).[7] "[T]he party seeking reformation must also 'show by clear and convincing evidence that the parties came to a specific prior understanding that differed materially from the written agreement." *Scion Breckenridge Managing Member, LLC*, 68 A.3d at 679, n.54 (quoting *Cerberus Int'l*, 794 A.2d at 1151-52). Plaintiff cannot possibly demonstrate either here.

There is no question that (i) the Mutual Release included in the Stipulation is unambiguous and sufficiently broad so as to encompass Plaintiff's claims against Defendants in this action (which Plaintiff admits in her Bankruptcy Motion); (ii) Plaintiff, a Doctor of Pharmacy with over twenty years of experience in the pharmaceutical industry (including as a chief executive officer)

---

[7] Plaintiff admits rescission due to unilateral mistake is an "extraordinary" remedy. *See* Piesco Decl., Ex. C, at ¶ 21.

is a sophisticated party who was represented by experienced bankruptcy counsel in connection with the Stipulation; and (iii) Plaintiff's counsel was fully aware of this litigation, as she previously represented Plaintiff in connection with the Automatic Stay Motion. *See* ECF Nos. 68-4, 68-5. Plaintiff cannot possibly argue otherwise; nor can she take the position that neither she nor her multiple counsel knew that the Mutual Release would impact her claims in this matter. And, in any event, Plaintiff's unilateral mistake as to the scope of the Mutual Release most certainly is not a ground to invalidate it. *See Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 2012 WL 1409013, at \*7 n.52 (Del. Sup. Apr. 4, 2012) (unilateral mistake of plaintiffs as to scope and effect of release would not invalidate release). The Stipulation, and the Mutual Release contained therein, is valid and enforceable.

### B. The Mutual Release is Enforceable Under Illinois Law

Even if Illinois law applied, the result would be no different. Under Illinois law, "unless mutual mistake or fraud has occurred, and because settlements are encouraged and favored, an unambiguous release will be given effect." *Tradex Global Fund SPC Ltd. v. Solaris Opportunity Fund L.P.*, 2025 WL 2144796, at \*6 (1st Dist. July 29, 2025). And where—as here—the language of a release is unambiguous, a plaintiff who is represented by counsel in negotiating a release is "presumed to have made an effective waiver." *Pierce v. Atchison, T. & S.F. Ry.*, 65 F.3d 562, 570 (7th Cir. 1995). There is no question that the Mutual Release is unambiguous and encompasses Plaintiff's claims against Defendants. Plaintiff's only argument against enforcement of the Mutual Release is that she did not understand its scope. Plaintiff cannot evade enforcement of the Mutual Release on this basis. *See Vandenberg v. Brunswick Corp.*, 90 N.E.3d 1048, 1057 (1st Dist. 2017) ("A unilateral mistake is insufficient to invalidate an agreement compromising and settling a disputed claim.").

To the extent Plaintiff intends to seek rescission of the Stipulation (as she is in connection with the Bankruptcy Motion), such relief is unavailable under Illinois law. Under Illinois law, rescission on the basis of unilateral mistake is only available "if it can be done without doing injustice to the other party", and where a party shows that "(1) the mistake is material to the transaction, (2) it did not result from lack of diligence, (3) it is of such grave consequence that enforcement would be unconscionable, and (4) the other party can 'be placed *in statu quo*' or its precontract position." *Vandenberg*, 90 N.E.3d at 1057 (citing *McCracken Contracting Co. v. R.L. DePrizio & Assocs., Inc.*, 122 Ill. App. 3d 680, 686 (1st Dist. 1984)). Given that, among other reasons, (i) rescission of the Stipulation would result in injustice to Optio Rx, its affiliated debtors, and Defendants; (ii) Plaintiff received considerable (and already paid) consideration in connection with the Stipulation; (iii) Plaintiff admits her purported misunderstanding resulted from her lack of diligence in reviewing the Stipulation; and (iv) enforcement of the Mutual Release is not unconscionable, Plaintiff is not entitled to rescission of the Stipulation.

### C. The Doctrine of Judicial Estoppel Prohibits Plaintiff from Taking Inconsistent Positions in This Action and in the Bankruptcy Matter

Defendants further submit that Plaintiff should be judicially estopped from taking inconsistent positions in this action and in the Bankruptcy Matter in order to take advantage of (or "game") the separate judicial forums. In the Bankruptcy Motion, Plaintiff seeks to have the Stipulation rescinded, or alternatively to have it "modified" such that her claims in this case are deemed outside the scope of the Mutual Release. *See* Piesco Decl., Ex. C at ¶¶ 1, 18, 19, 30. Plaintiff concedes in the Bankruptcy Motion that her claims in this action fall within the scope of the Mutual Release, but argues that enforcement of the Mutual Release would be "unconscionable." But that is not the position she has taken before this Court. *See* ECF Nos. 64, 64-1.

11

Plaintiff states in the Bankruptcy Motion that she "authorized her counsel to agree to a settlement" but "because of the language that was added by the Debtors' attorney—and reasonably not understood by the Claimant—the result would entail Claimant waiving claims worth over $1 million against non-debtor parties who were never involved in the claims objection process[.]" Piesco Decl., Ex. C at ¶¶ 2, 22(a). She acknowledges the Stipulation is valid and enforceable (and covers her claims against the Defendants here), but argues the Bankruptcy Court should rescind or modify the Stipulation to exclude the claims in this action. *See id.* at ¶¶ 1, 2, 18-19. Plaintiff overlooks that she received a broad general release of all claims by anyone claiming through the debtors, including claims for negligence, and also crystallized a seven figure claim against Optio Rx.

In the Status Conference Motion, however, Plaintiff states she "did not authorize the release of claims pending before this Court." ECF No. 64 at ¶ 25. Indeed, her sworn Affidavit submitted in support of the Status Conference Motion further averred she "did not approve the Bankruptcy Stipulation" and "never authorized a settlement of any kind to release my claims in" this matter. ECF No. 64-1 at ¶¶ 10, 11. To that end, Plaintiff takes the position that the scope of the Mutual Release does not cover her claims against Defendants, and is unenforceable to bar those claims. This is wholly inconsistent with the position Plaintiff has taken in the Bankruptcy Motion.

"The 'discrete doctrine' of judicial estoppel applies to bar parties from taking clearly inconsistent positions both in successive suits and in the same litigation." *Caberera v. Sas*, 777 F. Supp. 3d 900, 907 (2025) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)); *see also Kitchner v. Fiergola*, 2018 WL 4473359, at *2 (E.D. Wisc. Sept. 18, 2018) ("Judicial estoppel prevents a party from taking inconsistent positions in different suits or different phases of litigation in order to secure favorable treatment.") (citing *In re Airadigm Comms., Inc.*, 616 F.3d 642, 661

12

(7th Cir. 2010)). Plaintiff should be estopped from arguing in this Court that the Mutual Release is not enforceable, while arguing simultaneously in the Bankruptcy Court that it is enforceable but should be rescinded or reformed because enforcement would be unconscionable.

### III. Plaintiff's IWPCA Claims Can Be, and Were, Released

Defendants anticipate that Plaintiff will take the position that even if the Court finds (as it should) that the Mutual Release is valid and enforceable, the Mutual Release is ineffective to waive Plaintiff's IWPCA claims. There is no support for this position.

In the Status Conference Motion, Plaintiff referenced several cases to supposedly support the proposition that IWPCA claims cannot be released unless approved by a Court. Not one of these cases addresses the circumstances presented here (or the issue of federal preemption):

- *People ex rel. Martin v. Lipkowitz*, 225 Ill. App. 3d 980 (3d Dist. 1992), merely states that IWPCA suits are immune from general statutory limitation periods;

- *Mueller Co. v. Dep't of Labor*, 187 Ill. App. 3d 519 (4th Dist. 1989), states the policy objective of the IWPCA, and does not reference releases of IWPCA claims;

- *Integrated Genomics, Inc. v. Kyrpides*, 2010 WL 375672 (N.D. Ill. Jan. 26, 2010), involved the striking of a failure to mitigate affirmative defense to an IWPCA claim, and has nothing to do with bankruptcy releases or releases of IWPCA claims; and

- *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 WL 1403007 (N.D. Ill. Nov. 9, 2001); *O'Brien v. Encotech Constr. Servs.*, 183 F. Supp. 2d 1047, 1049 (N.D. Ill. 2002); and *Lewis v. Giordano's Enters.*, 397 Ill. App. 3d 581 (1st Dist. 2009), each involved private releases of IWPCA claims between employers and their employees that were not

13

negotiated and were signed without the involvement of counsel (and outside of the bankruptcy context).[8]

In short, while there have been some instances where courts voided IWPCA releases due to considerations of public policy on state law grounds, we are unaware of a single case which stands for the proposition that individuals can never privately settle or release IWPCA claims.[9] And, importantly, the Mutual Release was not some clandestine private agreement foisted upon Plaintiff, but a formal stipulation negotiated by Plaintiff's experienced bankruptcy counsel who was well aware of this case, and reviewed and approved by the Bankruptcy Court. *See* ECF No. 68-6. Indeed, Plaintiff has taken the position before the Bankruptcy Court that the Mutual Release applies to all her claims in this action. *See* Piesco Decl., Ex. C at ¶ 22.

Plaintiff's position that Illinois law requires a release of IWPCA claims must be approved by a court is incorrect. However, even if Plaintiff's position were correct, any requirement for judicial approval of an IWPCA release by an Illinois court would be preempted by the bankruptcy court's order approving the Stipulation and Mutual Release because "[f]ederal court orders enforcing a federal statute (such as the Bankruptcy Code) supersede any contrary state law." *In re Xpedior Inc.*, 354 B.R. 210, 235 (Bankr. N.D. Ill. 2006) (citing *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 233–34 (4th Cir. 2001) ("A state statute that thwarts a federal court order enforcing federal rights 'cannot survive the command of the Supremacy Clause.'")). Specifically,

---

[8] There is nothing in the statutory scheme of the IWCA which requires a court's approval of the release of an Illinois wage claim. Nor has the Illinois Department of Labor promulgated any guidance or regulations that require a court to bless a release of state law wage claims.

[9] Numerous examples of Illinois courts taking notice of privately negotiated settlements and releases of IWPCA claims exist. *See, e.g.*, *Washington v. Cook Cnty.*, 2025 WL 964512, at *6 (N.D. Ill. Mar. 31, 2025); *Forbus v. CF Remodeling, LLC*, 2024 WL 3678231, at *2 n.1 (S.D. Ill. July 22, 2024); *Iannotti v. Wood Grp. Mustang*, 2023 WL 6217061, at *1 (S.D. Ill. Sept. 25, 2023); *Graham v. Village of Dolton*, 2023 WL 3563220, at *2 (1st Dist. May 19, 2023).

14

"because of the supremacy clause, the [Bankruptcy] Code and the orders of the bankruptcy court acting pursuant thereto control[] over otherwise valid Illinois statutes, supreme court rules, [and] common law principles[.]" *Wehmeier v. UNR Indus., Inc.*, 213 Ill. App. 3d 1095, 1096 (4th Dist. 1990); *see also Nelson v. La Crosse Cnty. Dist. Atty. (State of Wisc.)*, 301 F.3d 820, 837 (7th Cir. 2002) ("Because of Article I's grant of exclusive power to the federal government to legislate in the bankruptcy context, and by virtue of the Supremacy Clause, a State may very well have its rights affected by a bankruptcy proceeding."); *Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*, 956 F.2d 152, 154 (7th Cir. 1992) (explaining that "it is well settled that the Supremacy Clause dictates that when state law is contrary to federal bankruptcy law, the bankruptcy provisions prevail"). Accordingly, even if releasing IWPCA claims somehow implicated Illinois public policy (and it does not), the Bankruptcy Court's order approving the Stipulation and the Mutual Release trumps any public policy considerations of the IWPCA.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Second Amended Complaint with prejudice, and grant such other relief as the Court deems necessary and proper.

Dated:    October 8, 2025
              Chicago, IL

**DLA PIPER LLP (US)**

By:   */s/ Yan Grinblat*
      Yan Grinblat (IL-6328805)
      444 West Lake Street, Suite 900
      Chicago, IL 60606
      T: (312) 368-4000
      F: (312) 236-7516
      yan.grinblat@us.dlapiper.com

      Joseph A. Piesco (*pro hac vice*)
      Ryan P. O'Connor (*pro hac vice*)
      1251 Avenue of the Americas

New York, New York 10020-1104
T: (212) 335-4500
F: (212) 335-4501
joseph.piesco@us.dlapiper.com
ryan.oconnor@us.dlapiper.com

*Attorneys for Defendants Pharmacy Management LLC, Ashok Nayyar, Jeffrey Kelly, Jonathan Tunis, and Barry Best*

16